## BORCHES & CO. *v.* ARBUCKLE BROS.

### *(Knoxville.* September Term, 1903.)

1. **RES ADJUDICATA.** Parol evidence is admissible to show *issue tried and determined, when.*

   Parol evidence is admissible to show the fact of issue tried and determined by the judgment rendered by a justice of the peace, and in a court of record, where the judgment is general and uncertain, or silent on the point, or does not actually adjudge a question appearing *prima facie* to be adjudged or settled. (*Post, pp.* 509-511.)

   Cases cited and approved: Estill v. Taul, 2 Yer., 467, 469-471; Warwick v. Underwood, 3 Head, 238; Williams v. Hollingsworth, 5 Lea, 358; Fowlkes v. State, 14 Lea, 14; State v. Bank, 96 Tenn., 591.

2. **SAME. Same.** Burden on party pleading to show question not appearing in judgment or only prima facie appearing.

   Where the record gives no intimation whether a particular matter was determined or not, it is incumbent upon the party alleging that the matter was settled by former adjudication to support his allegation by evidence *aliunde,* and where it appears *prima facie* that the question was adjudicated, but the record does not show that it was actually done, parol evidence is always admissible to show the facts. (*Post, p.* 510.)

   Case cited and approved: Fowlkes v. State, 14 Lea, 14.

3. **SAME.** Opinion of court examined to determine what was decided where judgment is silent.

   Where the judgment is silent upon the point, the opinion of the court may be looked to, in connection with the decree or judgment, for the purpose of determining what was really decided by the court, and intended to be adjudged. (*Post, pp,* 510-511.)

   Case cited and approved: State v. Bank, 96 Tenn., 591.

Borches & Co. v. Arbuckle Bros.

4. **SAME.** Peremptory charge and direction of federal circuit judge not disregarded by jury is res adjudicata on the question.

Where the presiding judge in the federal circuit court, exercising his right according to the practice obtaining in federal tribunals, peremptorily charges the jury on the facts, and directs a particular verdict on a certain issue, the effect of such direction, unless the jury shall disregard it and find in opposition thereto, is a decision on the particular point in favor of the party for whom the direction is given, and operates as *res adjudicata* on that point. (*Post, pp.* 501, 505, 509, 511, 513.)

5. **SAME.** No estoppel to rely upon, because of pleadings and evidence, and theories of fact and law.

A party is not estopped by his pleadings and evidence, and theories of fact and law, which are composed and settled by the judgment, and when so settled the adjudication is binding upon both parties, and is available, in its full force, to each, regardless of the constructions which they respectively championed while the battle was in progress. (*Post, p.* 512.)

6. **TENDER.** Of property in suit for its price means what.

Where the plaintiff in an action for the price of property sold avers in his declaration that part of the property was delivered, and "tenders" the balance, the "tender" simply means that plaintiff expresses in his declaration his readiness and willingness to perform his part of the contract. (*Post, pp.* 501, 512-513.)

7. **SAME.** Same. No pleadings by defendant that will enable the court to direct delivery.

Where, in an action for the price of property sold, the plaintiff "tenders" the property in his declaration, there are no pleadings that can be filed by the defendant in the case that would enable the court to direct a delivery of the undelivered property whose delivery was so tendered. (*Post, p.* 512.)

8. **SAME.** Same. Same. Failure to so plead does not estop him to sue for price paid for undelivered property, when.

Defendant's failure to file pleadings to obtain possession of prop-

Borches & Co. v. Arbuckle Bros.

erty tendered by plaintiff in his declaration for its price does not estop him, after verdict and judgment in his favor upon his plea of payment, to sue for and recover the price of the undelivered property so paid by him, for no such pleadings can be filed. (*Post, pp.* 505, 512-513.)

9. **CHANCERY PLEADING.** Bill to set aside a judgment for fraud must allege facts and not mere conclusions.

A bill to set aside a judgment because "fraud, surprise, mistake, and accident;" with general allegations of fraud, and without any sufficient allegations of facts showing the fraud will be dismissed upon demurrer. (*Post, pp.* 504-505.)

10. **ESTOPPEL.** Burden on party invoking it.

As a general rule, the burden of establishing an estoppel is by law cast upon him who invokes it. (*Post, p.* 510.)

Case cited and approved. Fowlkes v. State, 14 Lea, 14.

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

SAMUEL G. SHIELDS, for complainants.

SANSOM & WELCKER, for defendants..

---

MR. JUSTICE NEIL delivered the opinion of the Court.

On the sixth day of August, 1900, Arbuckle Bros. brought a suit in the United States circuit court at Knoxville against Borches & Co. to recover from them $5,750, alleged to be due for five hundred cases of coffee which it was averred Borches & Co. had bought, and had failed to pay for.

The declaration in that case alleged, in substance, that Arbuckle Bros. had sold to Borches & Co. the five hundred cases of coffee referred to, at the price stated, had delivered four hundred and twenty cases, and were ready and willing, or, as expressed in the declaration, "tendered," the remaining eighty cases: that none of the contract price had been paid; and that the whole of the $5,750 was due and owing.

The defendants to that case, Borches & Co., pleaded *non assumpsit, nil debet,* and payment.

Upon these issues the cause was brought to a hearing in the United States circuit court. His honor, Judge Clark, presiding in that court, exercising his rights according to the practice obtaining in federal tribunals, peremptorily charged the jury that the testimony showed that Arbuckle Bros. had sold to Borches & Co. the five hundred cases of coffee, and, in effect, settled this issue against Borches & Co. and in favor of Arbuckle Bros.; saying to the jury that the evidence was such that, if they should come to a different conclusion upon this issue, he would have to disregard their finding.

His honor, Judge Clark, however, did submit to the jury, as raising doubtful questions of fact, the matters arising upon the issues of *nil debet* and payment. Bearing upon these issues, there was evidence tending to show that Borches & Co. had paid the whole sum in controversy, $5,750, to one Gaut, as the agent of Arbuckle. Bros. There was also evidence tending to show that the money was paid to Gaut in his individual character,

and not as agent. Judge Clark left it to the jury to say whether the money had been paid to Gaut individually, or as the agent of Arbuckle Bros.; expressing his opinion, however, to the jury, that the payment had been made to Gaut as agent.

He also submitted to the jury, under the issues of *nil debet* and payment, the question as to whether Gaut had authority to receive payment for Arbuckle Bros., as their agent and representative; it having been insisted on behalf of Arbuckle Bros. that Gaut was only a sales agent, and not entitled to collect, and that this fact was known to Borches & Co.; and, on the other hand, it having been insisted, in behalf of Borches & Co. that Gaut was a general agent, with authority not only to sell, but to collect as well.

Under the charge of the court, the jury returned a general verdict finding "the issues in favor of the defendants and against the plaintiffs." Judgment was rendered on this verdict in favor of Borches & Co. and against Arbuckle Bros. for the costs of the cause on March 26, 1901.

On appeal to the circuit court of appeals at Cincinnati, the foregoing judgment was affirmed.

On March 11, 1902, after this judgment of affirmance, the present suit was brought in the chancery court of Knox county to recover the price of the eighty cases of coffee which had been paid for, but had not been delivered. The bill set out fully the foregoing proceedings in the federal court, and pleaded the judgment therein

as *res adjudicata.* It also alleged, in terms, a purchase by Borches & Co. of five hundred cases of coffee, at $5,-750, from Arbuckle Bros., the payment to the latter of the purchase price, the delivery of only four hundred and twenty cases, and the failure to deliver the remaining eighty cases.

Arbuckle Bros. filed an answer in which they denied that they had ever made a sale of five hundred cases of coffee to Borches & Co., or that they had delivered four hundred and twenty cases, or that they had ever received any payment from Borches & Co.

After putting in this general denial, they then averred that Borches & Co. had bought the coffee from their agent, Gaut, individually; that Borches & Co. had corrupted this agent, and had misled them by false statements, and that they did not know what the real facts were until they heard the testimony in the federal court case; and that a fraud was thus practiced upon them. They alleged that, by corrupting this agent, Borches & Co. had fraudulently gotten possession of the five hundred cases of coffee, and had never paid for them. They therefore sought by cross bill to recover against Borches & Co. a judgment for $5,750, the value of the five hundred cases of coffee. This pleading likewise asked that the federal court's judgment be set aside because of "fraud, surprise, mistake, and accident."

Arbuckle Bros. also insisted in their pleading that Borches & Co. could in no event recover the value of the

eighty cases of coffee, because they had declined to receive these eighty cases when tendered, and also because they had denied purchasing the coffee at all.

In the cross bill, Arbuckle Bros. prayed for a decree adjudging Borches & Co. their debtors for the four hundred and twenty cases of coffee, or $11.50 per case; also that it be adjudged that the proceedings in the federal court case were not *res adjudicata* in every respect, or, if the judgment in that case should be held *res adjudicata,* then that it be set aside on the ground of fraud, accident, and mistake.

To this cross bill Borches & Co. filed a demurrer, making the point that the judgment in the federal court case was *res adjudicata* upon the claim put forward for the recovery of the price for the four hundred and twenty cases. They also demurred to so much of the bill as sought to set aside the judgment in the federal court because no sufficient allegations of fraud were made in the cross bill.

The chancellor sustained both grounds of demurrer filed, as above stated, to the cross bill. He sustained the original bill of Borches & Co., and granted them a judgment against Arbuckle Bros. for $920, the contract price of the eighty cases of coffee, together with interest from the filing of the bill, $77; in all, $997.

From the foregoing decree Arbuckle Bros. prayed and obtained an appeal. The case was tried by the court of chancery appeals, and in that court the decree of the chancellor was reversed in so far as it directed a judg-

ment in favor of Borches & Co. for the $997.   In other respects it was affirmed.   From that decree both parties have appealed to this court.

In the opinion filed by the court of chancery appeals only a passing notice is given to the appeal prosecuted by Arbuckle Bros. in respect of the chancellor's disposition of the cross bill, the court being clearly of the opinion that that claim was concluded by the judgment in the federal court; and really no serious contention is made to the contrary in this court, as, indeed, there could not be.   The conclusion of the court of chancery appeals upon this point is so manifestly sound that we need not consume any further time in considering it.

The real controversy arises over the claim preferred by Borches & Co. to recover $920 and interest for the eighty cases of coffee undelivered.

The court of chancery appeals considered this matter in two aspects.   The first standpoint from which the controversy is viewed is as to whether Borches & Co. are entitled to the benefit of *res adjudicata* as to the question of there having been a sale to them by Arbuckle Bros. of five hundred cases of coffee.   The second view considered is whether Borches & Co. are estopped by their pleadings and their testimony in the federal court case.

The first of these controversies was determined against Borches & Co. on grounds to be presently stated, and the second was also determined against them.

In considering the second question, the court of chancery appeals held, in substance, that Borches & Co.

were estopped by their pleas to the effect that no such sale had been made as that alleged in the declaration in the federal court case. They also recited the testimony given by Mr. Borches in that case, and based on this an estoppel. They found that Mr. Borches had stated the real facts of the transactions with substantial accuracy (the facts on which the federal court based its finding that there had, indeed, been a contract of sale), but that he so construed the facts set forth in his testimony as to give them the color of a contract made between himself and the agent personally (that is, between him and Mr. Gaut), or, in other words, that Mr. Borches, in his testimony, construed the facts testified to by him to mean that he had made the purchase from Mr. Gaut personally, rather than from him as the agent of Arbuckle Bros.

The court of chancery appeals also referred to a letter which Borches & Co. wrote to Arbuckle Bros. before the litigation began in the federal court, this letter being to the effect that Borches & Co. had bought the coffee from Mr. Gaut personally. That court says that probably this of itself would be sufficient to operate as an estoppel.

In connection with these three matters of estoppel, there appears in the opinion of the court of chancery appeals a very able and learned discussion of estoppel of this character.

But in the view we take of this case, we need not go into these matters at all.

We think the fundamental error in the opinion filed by the court of chancery appeals was in failing to give any weight to the action of his honor the circuit judge, sitting in the federal court, in disposing of the issue raised upon the fact of the sale of the five hundred cases of coffee to Borches & Co.

We repeat that portion of the facts found by the court of chancery appeals which bears upon this immediate point.

That court says: "When the United States circuit judge gave the charge to the jury, exercising his power to do so, he peremptorily charged them that the proof showed that Arbuckle Bros. had sold to Borches & Co. the five hundred cases of coffee, and, in effect, settled this issue against Borches & Co. and in favor of Arbuckle Bros., saying to the jury that the proof was such that, if they were to come to a different conclusion upon this issue, he would have to disregard their finding and set it aside.

"The United States circuit judge, however, did submit to the jury, as a doubtful question of fact, the issue of *nil debet* and payment. He left it to the jury to say whether or not the money received from the bank on the discounted note was turned over to Gaut individually, or as the agent of Arbuckle Bros.; expressing, however, to the jury, his opinion that, under the facts, it was turned over to Gaut as agent. He also submitted to the jury, under the issue of *nil debet* and payment, the question as to whether or not Gaut had authority to receive pay-

ment for Arbuckle Bros. as their agent and representative; it being insisted on behalf of Arbuckle Bros., in the argument, that Gaut was only a sales agent, and not entitled to collect, and that this fact was known to Borches & Co.; and, on the other hand, it being insisted that Gaut was a general agent, with authority not only to sell, but to collect.

"Under the charge of the court, the jury returned a general verdict finding the issues in favor of the plaintiffs, whereupon judgment dismissing the case, and rendering a judgment for costs against Arbuckle Bros. and sureties, was entered."

It is clear from this recital of what was done in the federal court that there was an issue between the present complainants and the present defendants as to whether there had been a sale of the five hundred cases of coffee made by Arbuckle Bros. to Borches & Co., and that this issue was found in favor of Arbuckle Bros.; that is, it was settled in that case that Arbuckle Bros. had sold to Borches & Co. five hundred cases of coffee, and (referring to the term of the declaration) had delivered four hundred and twenty of these cases, leaving undelivered eighty cases.

It was also determined in that case, under the other issues, that Borches & Co. had paid to Arbuckle Bros. the price of these five hundred cases.

In the opinion of the court of chancery appeals, a point is made upon the fact that the jury responded only to the issue of *nil debet* and payment. It is said they

did not respond to the issue as to whether there had been a contract made, and the goods delivered. It is said that when the jury brought in their verdict that they found the issues in favor of the defendants to that case, Borches & Co., it meant only the issues of *nil debet* and payment. The court of chancery appeals held that the charge of the court could not be looked to for the purpose of determining this matter.

We think this a mistaken view. Under the practice in the federal court, a circuit judge has the right to give such a direction to the jury as was given in the case referred to; and the effect of such a direction, unless the jury disregard it and find in opposition thereto, is a decision upon the particular point in favor of the party for whom the direction is given.

There is a conflict of authority as to whether matters *aliunde* can be looked to for the purpose of determining the exact scope of a judgment under a plea of *res adjudicata*. That controversy has, however, in this State, been long settled in favor of the right to look to such matters *aliunde*.

In *Estill* v. *Taul*, 2 Yerg., 467, 469-471, 24 Am. Dec., 498, it is held that where judgment has been rendered by a justice of the peace, and in courts of record, where the judgment is general, parol evidence is admissible to show the fact of issue tried.

In *Warwick* v. *Underwood*, 3 Head, 238, 75 Am. Dec., 767, it was held that where the former judgment was general and uncertain, parol evidence was admissible

to show what was involved in the issue and settled by the judgment. In that case the parties were permitted to show that in the former suit the location of a certain line, by marks, acquiesced in, variant from the calls of the deeds, was tried and passed upon by the jury, in favor of Warwick, upon a proper plea involving that issue, and consequently that fact was held to be settled in the general verdict and judgment.

In *Williams* v. *Hollingsworth,* 5 Lea, 358, it was held that it was the duty of the court to construe a decree in a chancery cause for the purpose of ascertaining exactly what was decided.

In *Fowlkes* v. *State,* 14 Lea, 14, the court said: "As general rule, the onus of establishing an estoppel is by law cast upon him who invokes it. Freeman on Judgments, section 276. 'There can be no doubt,' says Mr. Freeman, 'that in all cases in which, from the record alone, no intimation is given whether a particular matter has been determined or not, it is incumbent upon the party alleging that the matter has been settled by former adjudication to support his allegation by evidence *aliunde.* Parol evidence is always admissible to show the facts, even if it appear *prima facie* that the question has been adjudicated, when the record does not show that it was actually settled.' "

In *State* v. *Bank of Commerce,* 96 Tenn., 591, 36 S. W., 719, it was held that the opinion of the court, where the judgment was silent upon the point, might be looked to for the purpose of determining what was really de-

cided by the court, and intended to be adjudged. In that case the decree adjudged that shares of stock of the bank in the hands of the shareholders were subject to general taxation. In the decree no reference was made to the capital, nor did it, in terms, adjudicate that the capital stock was not subject to general or *ad valorem* taxation; but the opinion then delivered went fully into the question, and it was held that the court had undoubtedly decided that the capital stock was not subject to general taxation. The court said: "Upon authority, we think it clear that we may look to the opinion, in connection with the decree, to ascertain what was intended to be and was by the court decided." Continuing, the court said: "We are of the opinion, and therefore hold, that the decree of the last term, construed in connection with the opinion, adjudged that the capital stock of the Bank of Commerce was not subject to general taxation."

Under these authorities, we think there can be no doubt that the court can look to the direction that the circuit judge gave to the jury, and consider its effect, for the purpose of determining what was really settled in that case. This being done, we think there can be no doubt that the point was adjudicated between these same parties that the five hundred cases of coffee had been sold by Arbuckle Bros. to Borches & Co., and that only four hundred and twenty of these cases had been delivered, leaving eighty cases undelivered. It was also adjudged in that case that the price of the five hundred cases had been paid.

It results that the complainants are entitled to recover the price of the eighty cases undelivered.

We do not think it necessary to dwell upon the question whether Borches & Co. should be held estopped by their pleadings and evidence in the federal court case, because, if it were true that an estoppel should arise out of such matters, in respect of and as against the very judgment pleaded as *res adjudicata,* the operation of judgments as adjudications between parties to the litigation would be so narrowed as to be practically destroyed, since there are few lawsuits in which there are not contending theories of fact and law. Indeed, it is these which are composed and settled by the judgment. When so settled, the adjudication is binding upon both parties, and is available, in its full force, to each, regardless of the constructions which they respectfully championed while the battle was in progress.

It is insisted by defendants that complainants are estopped because they did not take some steps in the federal court to have the eighty cases of coffee delivered for the reason that, as is stated, they were tendered in the declaration. By this is meant simply that Arbuckle Bros., plaintiffs in that case, expressed in the declaration their readiness and willingness to perform their part of the contract which they alleged they had made with Borches & Co. We are not aware of any pleadings that could have been filed by Borches & Co. in that case that would have enabled the court to direct a delivery of the eighty cases. The substance of the declaration filed by

Arbuckle Bros. was that they had sold the five hundred cases of coffee to Borches & Co., and delivered four hundred and twenty cases, and had been paid for none of them, and that they were ready and willing to deliver the remaining eighty cases upon the payment of the purchase money for the whole five hundred cases. In other words, in respect of the eighty cases, the declaration simply had, in substance, the averment of a readiness and willingness on the part of Arbuckle Bros. to perform their part of the contract.

In view of the construction which we have given to the proceedings in the federal circuit court, which we believe to be the only sound construction of those proceedings, it seemed to follow necessarily that the decree of the court of chancery appeals is erroneous, and that of the chancellor correct, and the chancellor's decree must be affirmed.

Let a decree be entered accordingly.